**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**GREENEVILLE DIVISION**

| | | |
|---|---|---|
| MARC STEVEN CRAIG, | ) | |
| Petitioner, | ) | NOS. 2:08-CV-56 |
| | ) | 2:04-CR-78 |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| Respondent. | | |

**MEMORANDUM OPINION AND ORDER**

Marc Steven Craig ("Craig" or "petitioner"), a federal prisoner, has filed this "Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, or Correct Sentence By A Person In Federal Custody," [Doc. 86]. The Court has determined, pursuant to Rule 4(b), Rules Governing Section 2255 Proceedings For The United States District Courts, that it plainly appears from the motion and the record of prior proceedings that the petitioner is not entitled to relief and the motion will be DISMISSED.

**I. Procedural Background**

On November 3, 2004, a criminal complaint, [Doc. 1], was filed in the United States District Court for the Eastern District of Tennessee at Greeneville charging Craig with the robbery of Washington County Bank in violation of 18 U.S.C. § 2113(a). Craig was subsequently indicted on the same charge by the federal grand jury on November 16, 2004, [Doc. 8]. Pretrial motions to suppress were filed and decided adversely to Craig. On February 14, 2005, the United States filed an information pursuant to 18 U.S.C. § 3559(c)(4) giving notice of its intention to seek increased punishment by reason of two or more prior serious felony convictions of the defendant, [Doc. 57]. The information alleged that on January 28, 1992, Craig was convicted in the United States District Court for the Western District of North Carolina for bank robberies in violation of 18 U.S.C. § 2113

which were committed on December 19, 1990, April 12, 1991, and August 26, 1991. The information also alleged that on July 30, 1998, Craig was convicted in the United States District Court for the Middle District of Florida of a bank robbery in violation of 18 U.S.C. § 2113 committed on December 5, 1997.

Craig subsequently entered into a plea agreement with the United States, [Doc. 61], in which he agreed to plead guilty to the indictment and his guilty plea was entered on April 12, 2005. During the change of plea hearing, the parties orally agreed to an amendment to the plea agreement and the amended plea agreement was filed in writing on April 25, 2005, [Doc. 68]. A Presentence Investigation Report ("PSR") was prepared by the United States Probation Office and disclosed on July 11, 2005. The PSR established that Craig was subject to a mandatory life sentence as provided for in 18 U.S.C. § 3559(c)(4).[1] Written objections to the PSR were filed by the defendant and, after an evidentiary hearing, these objections were overruled and the defendant was sentenced on August 8, 2005, to life imprisonment. Judgment was entered on August 16, 2005, [Doc. 74]. A notice of appeal was filed by Craig on the same date, [Doc. 75]. On September 29, 2006, the Sixth Circuit Court of Appeals affirmed, [Doc. 80]. *United States v. Craig*, 198 Fed. App'x 59 (6th Cir. 2006). Craig's petition for a *writ of certiorari* to the United States Supreme Court was denied on February 20, 2007, [Doc. 83]. The instant § 2255 motion was timely filed on February 14, 2008.

## II.  Factual Background

The parties entered into an agreed factual basis which was filed along with the plea

---

[1]  Except for the enhancement provided for in § 3559, Craig faced a statutory maximum sentence of 20 years. 18 U.S.C. § 2113.

agreement, [Doc. 62]. In that document, the parties stipulated as follows:

> On November 3, 2004, around 1:30 p.m., the defendant, Marc Steven Craig, entered Washington County Bank, 503 North State of Franklin Road, Johnson City, Tennessee, a bank whose deposits are insured by the Federal Deposit Insurance Corporation. The government's proof would show that Craig approached a teller window and told the teller, Tabitha Michelle Ricker, "this is a robbery," "I have a gun," and "I want hundreds, twenties and fifties." When Ms. Ricker handed Craig currency including $500 in $20 bills with recorded numbers ("bait bills"), Craig tossed those bills back at Ms. Ricker. However, Ms. Ricker was able to include three bait bills in the money taken. After obtaining approximately $2,362 in currency from Ms. Ricker, Craig left the bank. Craig then fled the scene in a white Nissan automobile.
>
> Craig was spotted a short time later by a Johnson City Police investigator as Craig pulled his car into the Sunoco convenience market parking lot at 603 West Market Street. The investigator approached Craig and subsequently observed clothing in the car matching that worn during the robbery. Craig was placed under arrest. The government's proof would further show that Mr. Robert Armstrong, the bank's branch manager, was brought to the Sunoco market where Craig was positively identified as the robber. After being transported to the Johnson City Police Department, Craig was found to be in possession of all of the stolen money, to include the three bait bills with recorded serial numbers.
>
> The above facts are stipulated by the parties as being true and correct.

[Doc. 62]. The agreed factual basis was signed by Craig and by his attorney, Tim S. Moore.[2]

During the change of plea colloquy, Craig, while acknowledging that he took money during the robbery through intimidation by approaching the bank teller, announcing that it was a robbery and demanding money, denied that he had a gun or "said anything about a gun." The bank teller later testified unequivocally at the sentencing hearing that Craig, after leaning into her teller

---

[2]   One of Craig's claims in his memorandum is that counsel was ineffective for advising Craig to sign the agreed factual basis that "admitted stating a gun threat during the bank robbery." As the factual stipulation and the entire record makes clear, the claim lacks factual merit. The stipulation was one that "the government's proof would show" that Craig made such a threat, not that he actually did, an allegation that Craig clearly retained the right to contest.

window, told her "this is a robbery. I have a gun." Craig testified at the sentencing hearing consistently with what he had said at the time of his change of plea, i.e., that he neither used a firearm nor threatened the use of a firearm during the November 3, 2004 robbery.

### III. Standard of Review

This Court must vacate and set aside petitioner's sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . ." 28 U.S.C. § 2255. Under Rule 4 of the Governing Rules, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveal the movant is not entitled to relief. If it plainly appears the movant is not entitled to relief, the court may summarily dismiss the § 2255 motion under Rule 4.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States,* 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996). To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F. 3d 352, 354 (6th Cir.

1994). *See also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F. 2d 1039, 1041 (6th Cir.), *cert. denied*, 439 U.S. 988 (1978). To warrant relief for a non-constitutional error, petitioner must show a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F. 3d 503, 506 (6th Cir.), *cert. denied*, 517 U.S. 1200 (1996). In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982).

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland* 466 U.S. at 687. As with any other claim under § 2255, the burden of proving ineffective assistance of counsel is on the petitioner. *Virgin Islands v. Nicholas*, 759 F. 2d 1073, 1081 (3rd Cir.

5

1985).

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires that petitioner show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. The petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The *Strickland* Court emphasized both prongs must be established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected, stating:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a

result.

*Id.* at 697.

## IV.  Analysis and Discussion

The petitioner states his general grounds for relief in his § 2255 motion as follows: (1) "Movant was denied Effective Assistance of Counsel as Guaranteed by the Sixth Amendment, U.S. Constitution"; (2) "Movant was denied Effective Assistance of Appellate Counsel as Guaranteed by the 5th and 6th Amendments U.S. Constitution" (3) "Movant's Guilty Plea was not entered Knowingly, Intelligently, and Voluntarily as Required by the 5th Amendment, U.S. Constitution;" and (4) "Movant is Actually Innocent of having a firearm of [sic] threatening Firearm during Robbery in this case."  For supporting facts and law in support of his claims, Craig refers to a memorandum of law which he filed contemporaneously with his motion.

In the memorandum of law supporting his § 2255 motion, Craig further refines and restates his grounds for relief.  Petitioner identifies six alleged instances of ineffective assistance of his trial counsel: (1) "Counsel Was Ineffective for Talking Movant Into Pleading Guilty and Signing Plea-Agreement Waiving Vital Rights Without Any Concessions by The Government;" (2) "Counsel Failed to Ensure that Movant's Guilty plea was Knowingly, intelligently, and voluntarily entered;" (3) "Counsel Failed to Make it Clear to Movant that any Guilty Plea under 18 U.S.C. § 2113(a) Would Automatically Result in Movant Recieving [sic] Life Imprisonment under 18 U.S.C. § 3559(c);" (4) "Counsel Failed to Adequately Investigate Movant's prior offense used by the Government for application of 18 U.S.C. § 3559(c);" (5) "Counsel was Ineffective for Advising movant to sign a factual stipulation that admitted threat of firearm during robbery;"  (6) "Counsel was Ineffective For Filing To Withdraw Movant's Guilty plea;"  and (7) "Counsel was Ineffective

7

For Not Preparing for Movant's Sentencing Hearing or Properly Objecting to PSR." Craig argues that he received ineffective assistance of appellate counsel because counsel did not appeal the district court's factual findings and legal conclusions at movant's sentencing and further claims that appellate counsel did not "brief and argue at least one meritorious argument on appeal" and gives as examples: (i) "Whether The District Court Erred By Ruling that Movant's Prior Bank Robberies involved the threat of firearm?;" (ii) "Whether The District Court Erred by accepting Movant's guilty plea when Movant denied elements of offense in open court at plea colloquy?;" (iii) "Whether The District Court Erred when it determined that Movant should be sentenced to life imprisonment under 18 U.S.C. § 3559(c)?"; and (4) "Whether The Court Plainly Erred And Violated Movant's Sixth Amendment Right to A Jury Trial by making Factual Determinations (i.e., prior convictions) that raised Movant's Statutory Sentence from 20 years to Life? (Apprendi v. New Jersey)."

### A.  Waiver of right to file motion pursuant to § 2255

As an initial matter, since Craig's plea agreement contained a waiver of rights to file a § 2255 motion, the instant motion may be subject to dismissal based upon the waiver.  In the plea agreement, Craig agreed that he "knowingly and voluntarily agrees to waive any rights he may have to file any post-conviction motions or pleadings pursuant to 28 U.S.C. § 2255," except that the "waiver does not affect the defendant's right to appeal or collaterally attack the conviction and sentence upon grounds of ineffective assistance of counsel and prosecutorial misconduct not known to the defendant at the time of defendant's guilty plea."  Apparently understanding the potential significance of the waiver of rights to collaterally attack his guilty plea, Craig first claims that the waiver is "unenforceable because it was not knowingly, intelligently, and voluntarily [made]"

because counsel "failed to adequately explain the meaning of '2255 motion' and/or 'collateral review', and failed to inform Movant as to the significant consequences of waiving such post-conviction remedies."

The Sixth Circuit has unequivocally held that a criminal defendant may waive the right to seek post-conviction relief in a plea agreement so long as such waiver is knowing and voluntary. *Watson v. United States*, 165 F.3d 486, 488-89 (6th Cir. 1999) ("[W]e hold that a defendant's informed and voluntary waiver of the right to collaterally attack a sentence in a plea agreement bars such relief."). A waiver ordinarily will be held to be knowing, intelligent and voluntary if a criminal defendant fully understands the nature of the rights to be surrendered and how such waiver would generally apply, even though he may not know all of the specific consequences that flow therefrom. *United States v. Ruiz*, 536 U.S. 622, 629 (2002). To determine whether a waiver is knowing and voluntary, the court looks to the totality of the circumstances surrounding the waiver. *Berry v. Mintzes*, 726 F.2d 1142, 1149 (6th Cir. 1984).

The record in this case reveals an informed and voluntary choice by Craig to enter into the plea agreement and waiver of his rights to collateral attack contained therein, notwithstanding Craig's protestation to the contrary. First of all, the plea agreement itself confirms that. The plea agreement provides that "[t]he defendant has thoroughly reviewed this agreement with his lawyer and defendant's lawyer has fully and completely answered all of the defendant's questions about this guilty plea and its consequences, including questions about sentencing, and has provided the defendant with satisfactory advice and representation." [Doc. 61, ¶ 6]. Secondly, an amendment to the plea agreement, signed by Craig, was filed on April 25, 2005, [Doc. 68], approximately two (2) weeks after the change of plea, which modified his waiver of rights to direct

appeal to permit Craig to appeal, in addition to the Court's rulings on his motions to suppress, the sentence imposed by the Court.[3] This amendment makes it abundantly clear that Craig understood the significance of appellate waivers and was able, through counsel, to negotiate a modification of the waiver subsequent to the entry of the guilty plea. Furthermore, the transcript of the change of plea hearing confirms the knowing and voluntary nature of the waiver. During that hearing, the Court fully complied with Federal Rule of Criminal Procedure 11.

Rule 11 requires that a district court verify that a defendant's plea is voluntary and that the defendant understands his or her applicable constitutional rights, the nature of the crime charged, the consequences of the guilty plea, and the factual basis for concluding that the defendant committed the crime charged. *United States v. Goldberg*, 862 F.2d 101, 106 (6th Cir. 1988); Fed. R. Crim. P. 11. Additionally, under Rule 11(b)(1)(N), "the court must inform the defendant of, and determine that the defendant understands the terms of any appellate-waiver provision in the plea agreement" before accepting the defendant's guilty plea. *United States v. McGilvery*, 403 F.3d 361, 363 (6th Cir. 2005).

In *Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir. 1999), the Sixth Circuit held that a trial court's proper plea colloquy cures any misunderstandings that a defendant may have had about the consequences of a plea. In this case, there is nothing in the record to suggest that Craig misunderstood the scope of his waiver of right to appeal and collaterally attack his guilty plea and sentence. Craig indicated at his change of plea hearing that he had reviewed the plea agreement with counsel, that he understood all the agreement's provisions, and that his guilty plea was not coerced.

---

[3] Craig did not appeal the sentence imposed and argues that his appellate counsel was ineffective for failing to do so. This argument will be addressed below.

Moreover, the record reflects that Craig was aware of the maximum sentence which could be imposed and that the Court would determine the sentence to be ultimately imposed. [4]

In this case, Craig affirmed before the Court, under oath, that he had read the plea agreement, reviewed it with counsel, and understood its provisions. He listened as the United States Attorney summarized the terms of the appellate and post-conviction waivers and agreed that, with the exception of his ability to appeal his ultimate sentence, the summary was accurate.[5] Craig specifically acknowledged that he had heard all that had been said about the plea agreement and that he understood that he was expressly waiving certain rights to appeal or to collaterally attack his plea. He further confirmed that he and counsel had fully discussed this waiver of his rights. Under these circumstances, defendant cannot reasonably argue that he misunderstood what a "2255 motion" was or the meaning of "collateral review".[6] Simply speaking, Craig's acknowledgments under oath refute the conclusory and unsupported allegation of his motion that he unknowingly agreed to the waiver.

A finding that Craig's waiver was knowing and voluntary, however, does not end the

_____

[4] While defendant acknowledged that the Court would determine his sentence "based upon the entire scope of defendant's criminal conduct," he also specifically acknowledged that he would be subject to the mandatory life sentence required by 18 U.S.C. § 3559(c)(1), depending upon the findings subsequently made by the Court. More specifically, he agreed that "defendant acknowledges that should the Court find that the instant offense is a 'serious violent felony', as defined in 18 U.S.C. § 3559(c)(2)(F), and that defendant has been convicted on separate prior occasions of two or more serious violent felonies, the Court will be required, pursuant to 18 U.S.C. § 3559(c)(1), to impose a sentence of life imprisonment."

[5] Defendant's counsel, after the government's summary of the waiver provisions of the plea agreement, raised the question orally of whether or not the plea agreement provisions included a waiver of Craig's ability to appeal his sentence and the government subsequently agreed that it did not bar Craig's direct appeal of his ultimate sentence. This oral agreement was the subject of the written amendment to the plea agreement subsequently filed.

[6] Craig never indicated, despite repeated references to § 2255 and "collateral attack" during the plea colloquy, that he lacked knowledge of the meaning of the terms.

inquiry.  Although Craig does not argue that his claims are not within the scope of the waiver, only arguing that the waiver was not knowing and voluntary, it does not appear to the Court that, as a general matter, the claims raised by Craig are within the waiver's scope.  Arguably, only claims numbered 1 and 2 above are within the scope of the waiver which waives Craig's right to bring claims of ineffective assistance of counsel as to matters known to him at the time of the entry of his guilty plea.  In reality, however, it appears that all of Craig's claims either go to the very validity of the guilty plea and generally cannot be waived, *see In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007),  or are claims of ineffective assistance of counsel subsequent to the guilty plea, which are not within the waiver's scope.  The Court will, therefore, consider the claims on their merits.  Thus, since the waiver does not bar Craig's claims, he has suffered no prejudice even if he could show deficient performance of counsel related to the waiver.

### B.  Ineffective Assistance of Counsel

The petitioner states his claims in several forms but underlying each claim is the same basic claim–that counsel gave him erroneous legal advice that the mandatory life sentence provisions of 18 U.S.C. § 3559 did not apply for robbery cases that did not involve the use of a firearm and that, as a result, petitioner pleaded guilty when he otherwise would not have done so on the mistaken belief that his two prior bank robbery convictions were not predicate offenses because no gun was used.  Except for this erroneous advice, petitioner alleges, he would never have testified under oath at sentencing that he only "threatened" use of a gun during the North Carolina and Florida bank robberies.  Not only does petitioner challenge the advice given him regarding whether the North Carolina and Florida bank robberies were crimes of violence for purposes of § 3559's mandatory life sentence, he claims the same erroneous advice was given with respect to the conviction in the instant

case and he specifically alleges that he thought he could not be subject to the mandatory life provision of § 3559 unless the instant offense involved the use of a firearm.

As set forth above, Craig pleaded guilty to a violation of 18 U.S.C. § 2113(a) for the November 3, 2004 robbery of Washington County Bank. He did not, however, admit that the November 3 offense involved the use of a firearm or the threat of a firearm. Also as noted above, the United States filed an information pursuant to 18 U.S.C. § 3559(c)(4) on February 14, 2005, some two months prior to the entry of Craig's guilty plea, of its intent to seek punishment pursuant to that code section. Title 18 U.S.C. § 3559(c)(1) provides for a mandatory term of life imprisonment for "a person who is convicted in a court of the United States of a serious violent felony" if that person "has been convicted (and those convictions have become final) on separate prior occasions in a court of the United States or of a state of 2 or more serious violent felonies." 18 U.S.C. § 3559(c)(1)(A)(i). The term "serious violent felony" is defined, in part, as robbery in violation of § 2113. 18 U.S.C. § 3559(c)(2)(F). The statute also contains, however, an exception which provides that a robbery conviction shall not serve as the basis for sentencing under § 3559(c) "if the defendant establishes by clear and convincing evidence that no firearm or other dangerous weapon was used in the offense and no threat of use of a firearm or other dangerous weapon was involved in the offense." 18 U.S.C. § 3559(c)(3)(A)(i).

As an initial matter, the Court must first determine whether or not an evidentiary hearing must be held on Craig's claim. "In reviewing a § 2255 motion in which a factual dispute arises, 'the *habeas* court must hold an evidentiary hearing to determine the truth of the petitioner's claims [and] [t]he burden on the petitioner in a *habeas* case for establishing an entitlement to an evidentiary hearing is relatively light.'" *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir.

2007) (citing *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)).   At first blush, Craig's claims would seem to require an evidentiary hearing to resolve the factual dispute concerning the actual advice given to Craig by his counsel.  However, an evidentiary hearing is not required if the record conclusively shows that the petitioner is entitled to no relief, as when "the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact."  *Valentine*, 488 F.3d at 333 (citing *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)).  Despite the nature of Craig's claims, a thorough review of the entire record in this case convinces the Court that the underlying basic claim of Craig, that is, that counsel gave him erroneous legal advice, cannot be accepted as true because the claim is contradicted by the record.  Therefore, the Court will not order an evidentiary hearing in this case.

Before addressing the issue of the advice given to Craig by his attorney, the Court will address  a preliminary issue.  Craig's claim could be characterized as an allegation that he erroneously believed that he was not subject to a mandatory life sentence in this case upon his guilty plea.[7]  To the extent Craig alleges that he believed he would avoid a mandatory life sentence by pleading guilty, that claim is flatly and clearly contradicted by the record.  The plea agreement Craig entered into with the government explicitly provides that he will be subject to a "maximum penalty" of "mandatory life imprisonment," [Doc. 61, ¶ 2].  Furthermore, the defendant specifically

---

[7]  Craig also claims that he should have been advised by counsel, before his guilty plea, not just that he was subject to a maximum of life imprisonment but that he would receive a term of life imprisonment. This claim of ineffective assistance also has no legal or factual basis.  All that Rule 11 or case law requires is that a defendant be informed of "any maximum possible penalty" and "any mandatory minimum penalty." Craig was so advised, and was further advised that his sentence could not be determined until after a PSR was prepared.  This really amounts to nothing more than a claim by Craig that he now thinks he made a bad choice.

acknowledged "that should the court find that the instant offense is a 'serious violent felony', as defined in 18 U.S.C. § 3559(c)(2)(F), and that defendant has been convicted on separate prior occasions of two or more serious violent felonies, the Court will be required, pursuant to 18 U.S.C. § 3559(c)(1), to impose a sentence of life imprisonment," [*Id.*, ¶ 3]. At the change of plea hearing, petitioner was advised once again that he was subject to a "maximum possible" term of mandatory life imprisonment pursuant to 18 U.S.C. § 3559(c), [Doc. 72, p. 13], and stated that he understood that the statute "provides under certain circumstances for a mandatory sentence of life imprisonment," [*Id.*, p. 14], that the Court "could in fact impose a sentence of life imprisonment," [*Id.*]. Therefore, any claim by Craig that he was not aware that he faced a possible mandatory minimum term of life imprisonment in this case is simply not credible.[8]

Furthermore, the record in this case is replete with indications that Craig did in fact understand that his prior convictions could serve as the necessary predicate convictions for serious violent felonies if they involved the use of a firearm or if the threat of use of a firearm was involved and that his attorney was under no mistaken impression otherwise. In addition, the record establishes that petitioner's trial counsel did not erroneously advise him that the robbery of the

---

[8] Craig makes the claim in his memorandum that counsel was ineffective because counsel convinced him to enter into a plea agreement which would "inexorably result in a mandatory life sentence." He labels the plea agreement as "unconscionable" because he gave up rights "for nothing in return." Craig in reality did get something in return; he retained the right at sentencing to contest the application of the statutorily required life sentence. In any event, counsel can hardly be faulted for recommending that Craig plead guilty to the bank robbery charge for which he had no reasonable defense and focus instead on an effort to avoid life imprisonment. That Craig was ultimately unsuccessful does not establish that counsel's advice was deficient. Although Craig claims that he would have fared better by going to trial, he has articulated no rationale in support of his argument.

To the extent Craig urges some *per se* rule that counsel is ineffective any time counsel advises a defendant to plead guilty to a charge he is clearly guilty of without a concession from the government as to a reduced sentence in return, he offers no legal or factual support for his position. This Court often presides over cases where defendants plead guilty to offenses even though they face significant mandatory minimum terms of imprisonment. The reasons for doing so may be many, including simple acceptance of responsibility.

Washington County Bank on November 3, 2004, would trigger the provisions of § 3559(c) only if that offense involved the use of a firearm rather than the threatened use of a firearm. Indeed, the record indicates petitioner's acknowledgment of as much, given his complete silence in the face of statements that contradict his position made in open court in his presence.

To begin with, the petitioner's plea agreement with the government contained an explicit provision which contained the petitioner's acknowledgment that he was aware that he might be subject to the mandatory life sentence required by 18 U.S.C. § 3559(c). He further acknowledged that he had read the plea agreement, that his attorney had explained its terms and conditions to him, and that he *fully* understood the terms and conditions of the agreement. He acknowledged that he had signed the plea agreement and was, at that time, satisfied with the representation he had received from his attorney, [Doc. 72, p. 5]. Furthermore, at the change of plea hearing, Tim Moore, petitioner's counsel, stated that "[t]he big issue here is whether, as far as sentencing purposes, whether he had a gun *or said he had a gun*," [Id., p. 8].[9] (emphasis added). Moore further stated to the Court that "(we) [Moore and Craig] have had some extensive conversations about the fact that if he has two prior robberies that qualify, and if the Court finds that this one qualifies, that it would be a life sentence under 3559; but as Mr. Smith [AUSA] indicates, that will be an issue for the Court," [Id., p. 14].

In addition, the AUSA, Mr. Smith, made statements before the Court in Craig's presence which clearly outlined the nature of the Court's subsequent inquiry about the application of the provisions of § 3559(c). Smith stated that the applicability of § 3559(c)'s mandatory life

---

[9]   This also refutes Craig's argument that counsel was "objectively deficient for not knowing the law."

imprisonment provision was "a fight we need to save for another day," and described the nature of the issue as "because 2113 is an enumerated statute under that enhancing provision and that it's the defendant's burden to prove that there ***wasn't a threat*** and the use of a gun." [Id., p. 12]. Furthermore, the petitioner's attorney represented to the Court near the conclusion of the change of plea hearing that he had made no representations to the defendant as to what sentence the Court might impose in his case. In the face of all of these statements, petitioner remained mute and did not suggest any lack of understanding of the issue to be decided subsequently by the Court under § 3559(c).

In addition, Craig himself acknowledged, through his own statements at the change of plea hearing, that he understood the nature of the Court's inquiry involving the provisions of § 3559(c). As noted above, Craig and his counsel had entered into a stipulation of facts as part of the plea agreement in this case. In that stipulation, Craig agreed that the government's proof would show that Craig approached the teller window at the bank and told the teller "this is a robbery," "I have a gun," and "I want hundreds, twenties, and fifties." During the change of plea hearing, when Craig was asked if he agreed with the government's "summary" of what he did, as set out in the stipulation, he answered "yes, sir." [Id., p. 8]. He made it clear to the Court, however, that while he agreed that the government's proof would be that he claimed to have a gun, his position was that "I didn't say I had a gun; and **that's what the whole argument has been since the beginning**, I never said I had a gun," indicating that he clearly understood the significance of the issue of whether or not he threatened the use of a firearm (*i.e.* "that's [ ] the whole argument"), [Id., p. 9].

Statements and actions taken by Craig and his attorney prior to and during the sentencing hearing further illustrate the incredibility of Craig's allegations in this § 2255 motion.

The PSR was disclosed to the defendant and his counsel on July 11, 2005. Among other things, the probation officer concluded in the PSR that Craig was subject to mandatory life imprisonment in the case and set out details about his prior bank robbery convictions. Paragraph 29 of the PSR contained a description of his conviction on November 21, 1991, of bank robbery in the United States District Court, Western District of North Carolina, at Charlotte in docket numbers A-CR-91-158-01, C-CR-91-168-01, and C-CR-91-169-01. The PSR set out the underlying facts with respect to the cases involved in each of those docket numbers.

In the case involving docket number C-CR-91-168, the defendant robbed the Home Federal Savings and Loan Association in Charlotte, North Carolina on April 12, 1991. During the robbery, he approached the bank teller and said "this is a robbery, I have a gun." In case number C-CR-91-169, the defendant robbed the NCNB National Bank of North Carolina in Charlotte on August 26, 1991. In that case, the defendant walked up to a teller counter, partially withdrew a silver colored revolver with a black grip and said "I have a gun." In the case involving docket number A-CR-91-158, the defendant robbed the First Citizen's Bank and Trust Company located in Charlotte, North Carolina on December 19, 1990. The bank reported that a handgun was used in the robbery and that the defendant removed the money from the teller's drawer himself.

In paragraph 30 of the PSR, the probation officer set out the details of petitioner's conviction for bank robbery in the United States District Court, Middle District of Florida, at Orlando, in docket number 98-39-CR-ORL-19A on May 5, 1998. That case involved the robbery of AmSouth Bank on December 5, 1997, in Winter Park, Florida. Petitioner approached the bank teller and demanded money in the form of twenties, tens and fives. Petitioner also demanded that the teller give him the money from a cash drawer at an adjoining teller window which was

unoccupied and advised the teller "I have a gun." He reached into his jacket pocket, exposed the handle of a cap gun, and displayed it to the teller.

After receipt of the PSR, which the petitioner acknowledged having received and reviewed with his attorney, [Doc. 79, pp. 36-37], the defendant, through counsel, filed an objection to the PSR. Specifically, the defendant objected to the finding that the maximum term of imprisonment is life and asserted "that he did not tell the teller he had a gun nor did he make any gestures so the teller would assume he had a gun." He argued, therefore, that the *instant* offense did not meet the definition of "serious violent felony" for the purposes of 18 U.S.C. § 3559(c)(3). He did not object to the information contained in paragraphs 29 and 30 of the PSR.

When the case was called for sentencing on January 7, 2005, the Court took up the objection of the defendant and sought to clarify with counsel whether the defendant acknowledged that he had two prior serious felony convictions and was only contesting whether the instant conviction triggered the provisions of § 3559(c) or whether he also challenged the underlying North Carolina and Florida convictions as predicate offenses. Counsel's response was telling. Mr. Moore stated that:

> I was operating primarily on the assumption, as we discussed at the change of plea, that this offense did not, didn't involve the use of a firearm *or the threat of that use*.
> I talked with him a few minutes on the phone this afternoon, and the conviction out of Florida – North Carolina, out of Charlotte, North Carolina, his statement was that, I think, because there was a firearm count and that it was dismissed, that he does not think that that ought to count, if I understand what our conversation was; . . .

[Doc. 79, p. 3]. After this exchange, the defendant said absolutely nothing to indicate any disagreement with what counsel had said. Furthermore, it is clear that Craig himself did not raise

19

the issue of whether either the North Carolina or the Florida conviction was an underlying serious violent felony within the meaning of § 3559(c) until the day of sentencing, when he raised the issue about his North Carolina conviction. [Id., pp. 3, 6]. Likewise, when the Court itself summarized the nature of the issue with respect to whether the instant offense triggered the provisions of § 3559(c), Craig did not express his misunderstanding or disagreement in any way. The Court said that "the burden is on Mr. Craig to show by clear and convincing evidence that no firearm or other dangerous weapon was used and that ***no threat of the firearm or dangerous weapon was involved in this offense***." [Id., p. 6].

Shortly after these exchanges between the Court and counsel, Craig was called as a witness at the evidentiary hearing held in connection with his sentencing hearing to hear proof related to the objection made by Craig. During that testimony, Craig's attorney asked him specifically ***if he knew "before this robbery as far as the consequences of having a gun or saying that you had a gun***?" Craig responded by acknowledging that "a gun enhances you. The use of a firearm in any kind of felony is going to enhance you. You know, they got those mandatory, what are those five, fifteen, twenty-five or whatever those new laws that came out." [Id., p. 21]. Thus Craig acknowledged knowing that his sentence could be enhanced and that mandatory sentences applied as a consequence "of having a gun or saying that [he] had a gun."

Three witnesses testified at the evidentiary hearing- Tabitha Ricker, the bank teller on duty at the time of Craig's robbery of Washington County Bank; Connie Rose, a customer waiting in line behind Craig at the time of the robbery; and Craig himself. Both Ricker and Rose testified unequivocally that Craig had employed the threat of the use of a firearm. Craig, as he had at the change of plea hearing, denied that he possessed a firearm or had said that he had a firearm

in his possession.[10]  Craig also acknowledged that in both the Charlotte, North Carolina and Winter

Park, Florida robberies he had told the teller in each case that he had a firearm in his possession.[11]

 After hearing the proof, the Court made the following findings:

> All right.  As I indicated earlier, Mr. Craig has filed an objection to the conclusion of the presentence report that a term of life imprisonment is mandatory pursuant to Title 18, United States Code, Section 3559(c)(1), which provides that upon a conviction in a court of the United States of a serious violent felony, the defendant shall be sentenced to life imprisonment, if the person has been convicted [of two prior serious violent felonies] and those convictions have become final on separate prior occasions.  Although the defendant raises the issue orally that the North Carolina conviction from the United States District Court in the Western District of North Carolina in case numbers A-CR-91-158-01, C-CR-91-168-01 and C-CR-91-169-01, even though the defendant contends that the offense does not establish a necessary predicate offense, that argument is foreclosed by his own testimony in this case that he told the teller during the first of those robberies that he did in fact have a gun.
>
> That leaves us with the issue of whether or not the current offense is a serious violent felony such as to trigger the mandatory life imprisonment set forth in 3959(c) [sic].  Pursuant to that statute, the burden is upon the defendant to prove by clear and convincing evidence either that no firearm was used– to prove that no firearm or other dangerous weapon was used in the offense and that *no threat of use of a firearm or other dangerous weapon was involved in the offense*.  Although the Sixth Circuit has not apparently specifically addressed the issue of whether or not a communication to a bank teller by the robber that he has a gun, when in fact such is not the case, the Seventh Circuit has squarely addressed the question in the *Washington* case cited by the government; and I think the reasoning of the Seventh Circuit is quite persuasive.  The Seventh Circuit found that such a statement implies a threat of use of a

---

[10]  As "Ground Four" in his motion, Craig frames a claim that he is "actually innocent" of possessing or threatening the use of a firearm in this case.  That issue has already been resolved by the Court at the time of Craig's sentencing and he offers no new facts to support such a claim.

[11]  Counsel later acknowledged to the Court that Craig's admission resolved any issue as to whether or not either the North Carolina or Florida bank robbery convictions were predicate offenses for the application of § 3559(c).

firearm.

> Mr. Craig has testified that he did not either possess a firearm or make a threat of the use of a firearm in this case. However, this Court does not find Mr. Craig's testimony on that issue to be credible and cannot find that he has proven by his own testimony by clear and convincing evidence that no threat of use of a firearm was made. In fact, this Court finds that the proof otherwise is in fact quite clear and convincing, and this Court finds that Mr. Craig did in fact based upon that standard use a threat of use of a firearm or other dangerous weapon in this offense. I, therefore, find that the provisions of 39–3559(c)(1) requiring a mandatory term of life imprisonment applies in this case.

> Mr. Craig's objection to the presentence report's conclusion is overruled.

[Doc. 79, p. 33]. Despite the Court affording Craig the opportunity to allocute within minutes of that finding, he once again failed to express any misunderstanding or to express in any way that his attorney had erroneously advised him that robbery offenses qualified as serious violent felonies only if they involved the use of a firearm, but not if they also involved the threat of use of a firearm. In fact, when given the opportunity to allocute, Craig declined the Court's offer. [Doc. 79, p. 37].

All of this makes it compellingly clear that Craig's assertions that his counsel gave him erroneous advice is not true and makes his assertions that he would not have entered into a plea agreement or entered a guilty plea if he had been aware that the provisions of §3559(c) would apply if the offense involved the threat of the use of a firearm simply incredible. Also noteworthy is the fact that Craig testified at the sentencing hearing that he has a "relatively high" IQ and that he could complete the *Wall Street Journal* crossword puzzle "typically in about 20 or 30 minutes."

One other issue with respect to the prior serious felony convictions needs to be addressed. Craig argues that he never would have made the admission during this evidentiary hearing that he had threatened the use of a firearm during the Charlotte and Winter Park robberies if he had known that such an admission would have the effect of qualifying those convictions as

predicate offenses under 3559(c). Such an argument, however, also lacks any credibility. First of all, Craig made the admissions <u>within minutes of the</u> Court's statement of the issue as whether Craig could show by clear and convincing evidence that no threat of a firearm was involved. Secondly, as noted above, petitioner has never made any challenge to the conclusion that the Florida conviction involved a serious violent felony. Indeed, court records related to that case clearly establish that fact. Subsequent to Craig's conviction and sentencing in this Court, he filed a motion to vacate his conviction in the United States District Court, Middle District of Florida, Orlando Division, pursuant to 28 U.S.C. § 2255 alleging that "he did not become aware of the consequences of the [Florida] conviction until it was used to enhance his sentence imposed by the United States District Court for the Eastern District of Tennessee for the offense of bank robbery." In that proceeding, petitioner asserted that he did not use a gun during the commission of the bank robbery in Florida. However, the District Court noted in its order dismissing the § 2255 motion as untimely that during his Florida sentencing hearing, "Petitioner's counsel indicated that Petitioner used a toy gun to perpetrate the offense. (Crim. case Doc. No. 29 at 5, 24)."[12] Petitioner's assertion in the instant § 2255 motion that he would never have admitted that he threatened the use of a firearm during the Florida robbery rings hollow in light of the judicially established evidence to the contrary.

The same is true of the petitioner's conviction in the United States District Court for the Western District of North Carolina at Charlotte. After petitioner's conviction in that case, he appealed an order of that court denying his motion to withdraw his guilty plea, raising several issues, including a claim of ineffective assistance of counsel. *See United States v. Craig*, 985 F.2d 175 (4th

---

[12] The Court's order denying Craig's § 2255 motion is available through that court's CM/ECF system as document 16 in case number 6:08-cv-923-orl-19KRS.

Cir. 1993). The argument raised in this Court by Craig claiming that his North Carolina conviction should not count as a predicate offense is that a gun count also charged in that indictment had been dismissed. The Fourth Circuit's opinion indicated that Craig had been charged in that case with one count of bank robbery in violation of 18 U.S.C. § 2113(a) and a charge of armed bank robbery in violation of § 2113(d). Presumably, it is the armed bank robbery charge in violation of § 2113(d) to which Craig refers. What he has not acknowledged, however, is that his plea agreement with the government in that case provided that, despite the dismissal of the § 2113(d) count, the government would seek a three level enhancement in his offense level for using a weapon during the bank robbery. Despite his objection at sentencing, the three level enhancement for using a weapon was in fact applied. *Craig*, 985 F.2d at 177, FN*. In view of the judicially established fact that he used a weapon during that bank robbery, his willingness to admit that he threatened the use of a gun during that robbery is not surprising and makes his claim that he would never have done so had he known that threatening the use of a weapon would make the conviction a predicate offense under § 3559(c) lack credibility.

In short, the record in this case conclusively establishes that Craig's claim that counsel erroneously advised him that only bank robbery offenses which involved the use of a firearm, and not the threatened use of a firearm, could be used as either a predicate offense or as a triggering offense for the application of § 3559(a) is refuted. As a result, despite the nature of his claim, there is no need for any evidentiary hearing in this case. Because all of Craig's claims in this § 2255 motion are premised on the underlying claim that his attorney gave him erroneous advice, all of his claims lack merit, including his claim that appellate counsel was ineffective for not raising on direct appeal an issue of whether the district court erred by ruling that his prior bank robberies

involve the threat of a firearm resulting in a sentence in life imprisonment in this case.[13]

## V.        Conclusion

For the reasons set forth above, the Court holds petitioner's conviction and sentencing were not in violation of the Constitution or laws of the United States. Accordingly, his motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 will be DENIED and his motion DISMISSED.

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals disapproves of the issuance of blanket denials of certificates of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id*. at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Id*.

Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims

---

[13] Petitioner does make two arguments of ineffective assistance on appeal which do not appear to involve the same basic underlying issue. First of all, petitioner argues that appellate counsel should have argued that the district court erred by accepting movant's guilty plea when he "denied elements of offense" in open court. As noted in the body of this memorandum opinion, defendant did deny the use or threat of the use of a firearm during the Washington County Bank robbery. Neither use of a firearm nor the threat of the use of a firearm is an essential element of a violation of 18 U.S.C. § 2113(a) and defendant makes no argument to the contrary. Secondly, the petitioner argues that the Court erred by denying him a right to a jury trial by making factual determinations about his prior convictions that raised his maximum possible sentence from 20 years to life imprisonment in violation of *Apprendi v. New Jersey*. *Apprendi v. New Jersey*, 530 U.S. 466 (2000), specifically excepts the fact of a prior conviction from the rule announced in that case, *Id*. at 490, and the failure to raise that issue on appeal was not deficient performance.

debatable or wrong." While this Court believes that its decision not to grant an evidentiary hearing is the correct holding, such holding is at least arguably debatable. Therefore, the Court will grant petitioner a certificate of appealability as to the question of whether or not the Court should have conducted an evidentiary hearing but not as to any other issue.

A separate judgment will enter.


ENTER:

s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE